UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

Issa Fakhouri,   Case No. 13-57147-SWR
   Chapter 13
          Debtor.     /

**OPINION OVERRULING HOME-OWNERS INSURANCE
COMPANY'S OBJECTION TO DEBTOR'S CHAPTER 13 PLAN**

The matter before the Court is the Objection of Creditor Home-Owners Insurance Company (hereinafter referred to as "Home-Owners") to Debtor's Chapter 13 Plan. For the following reasons, Home-Owners' Objection is overruled. As all other objections to Debtor's Plan have been resolved, Debtor's Chapter 13 Plan is confirmed.

I. FACTS

On or about February 8, 2011, Home-Owners filed a declaratory judgment action in state court against debtor, Issa Fakhouri. The suit alleged that Mr. Fakhouri and members of his family had defrauded Home-Owners Insurance. On December 6, 2011, Mr. Fakhouri entered into a consent judgment with Home-Owners and agreed to repay $30,000.00 by making monthly installments in the amount of $500.00 per month.

On September 13, 2013, Mr. Fakhouri (hereinafter referred to as "Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On September 16, 2013, the Court issued its "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, and Deadlines." That notice set December 24, 2013 as the deadline for filing objections to

discharge or to challenge the dischargeability of a debt. At the time the petition was filed, Debtor had reduced the balance owed to Home-Owners to $16,811.37.

On October 2, 2013, Debtor filed his schedules, his proposed Chapter 13 Plan and his Chapter 13 Statement of Current Monthly and Disposable Income. Debtor's schedules state that Debtor is single with net disposable income of $2,615.00 per month and monthly expenses of $2,315.50.[1] His monthly expenses include $625.00 per month for rent, $275.00 per month for food, and $299.00 per month for a car payment. Schedule E (Priority Unsecured Debt) states a balance owed to the Internal Revenue Service in the amount of $14,466.98, of which $3,025.76 is a priority unsecured claim. Debtor's Schedule F (Unsecured Debt) lists debt in the amount of $57,149.60, including the balance owed to Home-Owners.

Debtor's original Plan proposed paying Home-Owners $300.00 per month for 60 months. On January 3, 2014, Debtor filed his First Amended Plan of Reorganization. The amended plan increased the monthly plan payment to Home-Owners to $350.00 per month for 60 months. It also proposed paying the priority claim of the IRS in full, attorney fees in the estimated amount of $4,000.00 ($2,800.00 to be paid through the Plan) and the balance of the plan payments to unsecured creditors.

On January 6, 2014, Creditor Home-Owners filed an Objection to Debtor's Amended Plan. Home-Owners objected to confirmation on the grounds that Debtor's

---

[1]Debtor's gross monthly income as reflected on Schedule I is $3,570; his current monthly income as reflected in his Chapter 13 Statement of Current Monthly Income (the B22C form) is $4,515.00. The discrepancy is explained on Line 57 of the B22C form where Debtor states that his monthly income declined from the 6 month average reflected on the B22C form because of a "loss of work hours" resulting in $945 less income per month.

plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

On January 14, 2014, the Chapter 13 Trustee filed Supplemental Objections to Debtor's Chapter 13 Plan.

On January 29, 2014, the Court held a hearing on confirmation of Debtor's Plan of Reorganization. At the hearing, the Chapter 13 Trustee stated that Debtor agreed to increase his monthly plan payments to $434.00, which resolved the Trustee's objection to confirmation of Debtor's Plan of Reorganization. However, Home-Owners objected to confirmation on the grounds that Debtor's Plan was not filed in good faith. At the conclusion of the hearing, the Court requested that Debtor file a brief in support of Debtor's argument that his Plan had been proposed in good faith and should, therefore, be confirmed. On February 5, 2014, Debtor filed his brief.

## II. LEGAL ANALYSIS

11 U.S.C. § 1325(a) lists the requirements for confirming a debtor's Chapter 13 Plan of Reorganization. Home-Owners objects to confirmation of Debtor's Plan pursuant to 11 U.S.C. § 1325(a)(3). The objecting party has the initial burden of producing evidence in support of an objection. *In re Henry,* 328 B.R. 529, 538 (Bankr. S.D. Ohio 2004). The debtors have the ultimate burden of proof to show that the requirements of 11 U.S.C. § 1325 have been met. *Id.; In re Hogue* 78 B.R. 867, 872 (Bankr. S.D. Ohio 1987); *In re Carver,* 110 B.R. 305, 311 (Bankr. S.D. Ohio 1990) (Cole, J.). *See also Hardin v. Caldwell (In re Caldwell)* 895. F.2d 1123, 1126 (6th Cir. 1990) (*"Caldwell II"*); *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 273 B.R. 87, 91 (6th Cir. BAP 2002).

Pursuant to 11 U.S.C. § 1325(a)(3), a debtor's plan of reorganization must be proposed in good faith. The factors to be used in evaluating a debtor's good faith are set forth in *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir. 1990). Those factors are:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and likelihood of future increase in income;
>
> (3) the probable or expected duration of the plan;
>
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
>
> (5) the extent of preferential treatment between classes of creditors;
>
> (6) the extent to which secured claims are modified;
>
> (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;
>
> (8) the existence of special circumstances such as inordinate medical expenses;
>
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
>
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;
>
> (11) the burden which the plan's administration would place upon the trustee; and,
>
> (12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*Caldwell*, 895 F.2d at 1126-1127. Home-Owners argues that many of the above factors

4

13-57147-mar    Doc 40    Filed 02/07/14    Entered 02/07/14 13:17:53    Page 4 of 9

weigh against a finding that Debtor filed his plan in good faith.

A.  Accuracy of Debtor's Claimed Income and Expenses

First, Home-Owners argues that Debtor could be committing significantly more income to the Plan. Home-Owners argument is not supported by either Debtor's B22(C) form (which allows a debtor to subtract standardized expenses from debtor's current monthly income) or by Debtor's Schedule I and J. [2] Using the standardized deductions allowed by 11 U.S.C. § 707(b)(2), Debtor's B22(C) form states that Debtor has only $110.31 available each month to fund a Chapter 13 plan. (Line 59, B22(C) Form). If the Court relies on Debtor's Schedules I and J, Debtor has $300.00 per month to fund his Chapter 13 Plan. In order to satisfy the Trustee's concerns that Debtor underestimated his income, Debtor has agreed to increase his plan payment to $434.00 per month. Home-Owners does not dispute that Debtor's income has declined, nor does Home-Owners argue that any of the actual expenses listed on Debtor's Schedule J are excessive. Based on Debtor's B22(C) form, Debtor's Schedules I and J, and the increase in Debtor's monthly payment, the Court finds that Debtor is committing his maximum projected disposable income to the plan as required by 11 U.S.C. § 1325(b)(1)(B).

B.  Attorney Fees.

Home Owners also takes issue with the proposed attorney fees and Trustee's fees in the instant case, arguing that the fees are excessive. The fee owed to the Chapter 13 Trustee is required by statute is not subject to challenge. Based on the

---

[2]Current monthly income is the average of Debtor's income for the six months preceding the filing of the case.

5

worksheet attached to Debtor's Plan of Reorganization, Debtor's estimated pre-confirmation fees are $2,800 and his estimated post-confirmation fees are $1,500. While Home-Owners is correct that these fees will reduce the amount available to unsecured creditors, the Court finds that the proposed attorney fee is not an indication of a lack of good faith.

Pursuant to 11 U.S.C. § 330(a)(1(A) attorneys are entitled to reasonable compensation for actual, necessary services. The Court notes that in this district, an attorney may request a pre-confirmation fee of up to $3,500 in a Chapter 13 case without filing a fee application. E.D. Mich. LBR 2016-1(c). Pre-confirmation attorney fees in this case (to be paid though the plan) are $2,800, an amount less than the amount determined to be presumptively reasonable. Nor is it unreasonable for Debtor's counsel to estimate that his post-confirmation fee will be $1,500. Debtor's plan is proposed as a five year plan; there may well be unanticipated events which will necessitate a plan modification. Debtor's counsel's proactive estimation of future fees does not support an argument that Debtor's plan was not proposed in good faith.

Home-Owners' reliance on *In re Smith*, 328 B.R. 797 (Bankr. W.D.Mo. 2005) is misplaced. In *Smith*, debtor's total proposed plan payments amounted to $1,800, the proposed attorney fee was $1,000. Certainly when the proposed attorney fee is more than 50% of the payments proposed by a debtor, there may be an issue of good faith. However, those facts are not present in the instant case.

    C.    <u>Debtor's Sincerity in Filing his Chapter 13 Case</u>

Home-Owners also questions Debtor's sincerity in filing a Chapter 13 bankruptcy. Home-Owners concedes that Debtor made payment on his debt to Home-Owners for 2

years prior to filing for bankruptcy reducing his debt from $30,000 to $16,000. Debtor has several debts in addition to the balance owed to Home-Owners. He owes $14,441.22 to the IRS, $18,000 to a creditor Capital One Commercial Group, Inc., and deficiency balances on two cars totaling $16,643.60. Debtor was making payments on his debts until he suffered a significant drop in income (see footnote 1).

On these facts, the Court finds that Debtor's filing of his Chapter 13 case was necessitated by a decrease in income, which prevented him from paying his outstanding debts, including the debt he had been paying regularly to Home-Owners. There is no bad faith motive in filing a Chapter 13 under such circumstances.

D.  Debtor's Choice to File a Chapter 13 Case

Lastly, Home-Owners argues that the debt owed by Debtor to Home-Owners, could not have been discharged in a Chapter 7 case because the debt was incurred by fraud and, therefore, Debtor's choice to file a Chapter 13 is indicative of bad faith. The Court finds Home Owners' argument unpersuasive for two reasons. First, there has never been a judicial finding that Debtor committed fraud. Second, there has been a significant change in bankruptcy law since the *Caldwell* case was decided.

Prior to the enactment of BAPCPA in 2005, debts incurred by fraud could be discharged in a Chapter 13 case, but not discharged in a Chapter 7 case. The difference in the discharge provisions of Chapter 7 and Chapter 13 often caused debtors with outstanding debts incurred by fraud to choose a Chapter 13 case over a Chapter 7 case. However, BAPCPA amended the discharge provisions for Chapter 13 cases to provide that debts incurred through fraud could no longer be discharged in a Chapter 13 case. *See* 11 U.S.C. § 1328(a)(2). Since 11 U.S.C. § 1328 was amended,

creditors holding claims which resulted from the fraudulent conduct of the debtor have an identical remedy whether the case is filed as a Chapter 7 or a Chapter 13 case. The creditor's remedy is to file a nondischargeability action to block the discharge of the debt. Pursuant to Fed. R. Bank. P. 4007(c) such action must be filed within sixty (60) days of the first meeting of creditors.

In the instance case, had Home-Owners wanted to block the discharge of the debt owed to it on the grounds that the debt was incurred by fraud, Home-Owners could have done do. Home-Owners had the same right to block Debtor's discharge of the debt as Home-Owners would have had if Debtor had elected to file a Chapter 7 case. Home-Owners chose not to file such an action by the December 24, 2013 deadline, and cannot now argue its choice demonstrates a lack of good faith by Debtor.

E.   Remaining *Caldwell* Factors

The other factors used for analyzing a debtor's good faith under 11 U.S.C. § 1325(a)(3) are not relevant to this case. As set forth above, when the relevant *Caldwell* factors are applied to the facts of this case, Home-Owners has not met its burden of producing evidence to support its objection that Debtor's case was not filed in good faith. Home-Owners' objection to Debtor's Plan is overruled.

III.  Conclusion

For the reasons set forth above, Home-Owners' objection to Debtor's Chapter 13 Plan is overruled. Debtor's Chapter 13 Plan of Reorganization is confirmed. Debtor shall present an Order Confirming Plan to the Chapter 13 Trustee on or before February

12, 2014. The hearing scheduled for February 12, 2014 is cancelled.

Signed on February 07, 2014

                                          /s/ Marci B. McIvor
                                          Marci B. McIvor
                                          United States Bankruptcy Judge